UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID HOSKINSON,

    Petitioner,

v.                                                     Civil Action No. 1:12-cv-14258-BC
                                                         Honorable Thomas L. Ludington

DANIEL HEYNS,

    Respondent.
_____/

**OPINION AND ORDER GRANTING MOTION TO AMEND, DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner David Hoskinson was convicted in Michigan state court of one count of criminal sexual conduct in the third-degree (CSC III) and one count of criminal sexual conduct in the fourth-degree (CSC IV). He challenges the constitutionality of those convictions pursuant to 28 U.S.C. § 2254, raising ineffective assistance of counsel and Confrontation Clause claims. For reasons detailed, the petition will be denied.

**I**

The Michigan Court of Appeals summarized the underlying facts of this case, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002). The Court of Appeals recounted:

> This case arises out of a sexual incident occurring between David Hoskinson and the complainant occurring either late in the evening of December 29, 2007, or in the early morning hours of December 30, 2007.
>
> The complainant and Elizabeth Hoskinson, David Hoskinson's wife, were best friends. The Hoskinsons and the complainant used to live across the street from each other in Auburn Hills, but the Hoskinsons eventually moved about one mile

away, into Rochester Hills. The complainant knew the Hoskinsons for about two and half years. Two and half years before the sexual incident and before the complainant and Elizabeth Hoskinson became best friends, the complainant performed fellatio on David Hoskinson. She did not consider it an intimate act because it only occurred one time.

On the night of December 29, 2007, the complainant, Elizabeth Hoskinson, and Layla Bromm, the Hoskinsons' niece, decided to go to the bar. The complainant drove to the Hoskinsons' Rochester Hills house around 7:30 p.m. Elizabeth Hoskinson, Bromm, David Hoskinson, and all of the Hoskinsons' children were home. The original plan was for the complainant, Elizabeth Hoskinson, and Bromm to go out to the bar for an evening of drinking, but David Hoskinson invited himself to join the group. David Hoskinson agreed to be the designated driver for the evening.

The group arrived at a bar in Auburn Hills around 9:00 p.m. The complainant and Elizabeth Hoskinson began consuming alcohol heavily. The complainant stated that she had about five vodka and sodas and a beer, but no shots. The complainant said consumption of these drinks affected her judgment because she was no longer a "big drinker." When the group left the bar around 1:00 a.m., both the complainant and Elizabeth Hoskinson were inebriated.

After leaving the bar, they drove through the drive-thru at Taco Bell to get food, and then went to the Hoskinsons' house to eat the food. Upon arriving at the house, David Hoskinson had problems getting the front door to his house open, so the complainant decided to urinate on the other side of the vehicle. The complainant stated that she normally did not urinate outside, but her consumption of alcohol affected her judgment that night. After that, David Hoskinson was able to get the front door open, and the group entered the house to eat the food.

Around 2:30 a.m., David Hoskinson and the complainant left the Hoskinsons' house. David Hoskinson had agreed to drive the complainant to her boyfriend's house in Sterling Heights. Within a couple of minutes after David Hoskinson began driving, the complainant rested her head against the passenger side window and fell asleep.

The complainant awoke while David Hoskinson was driving to find that her pants were undone and pulled down, and David Hoskinson had his fingers inside her vagina. The complainant saw that her hand was on David Hoskinson's exposed and erect penis. At the same time, the complainant heard David Hoskinson asking her if she wanted him to take her to a parking lot and "finish it off." The complainant understood "finish it off" to mean that David Hoskinson wanted to have sex with her. The complainant took her hand off of David Hoskinson's penis and unsuccessfully tried to remove David Hoskinson's hand from her vagina. The complainant told David Hoskinson to stop, but he would not, and the complainant began crying. Once David Hoskinson realized that the complainant

was crying, he removed his hand from the complainant's vagina. The complainant stated that David Hoskinson's fingers were inside her vagina for about one minute.

David Hoskinson then began panicking and screaming. He told the complainant that she could not tell Elizabeth Hoskinson or anyone else what happened. David Hoskinson pulled into a parking lot and quickly grabbed the complainant's face. David Hoskinson told the complainant to calm down, to not tell anyone what happened, and to zip her pants back up.

The complainant then called her boyfriend to get the exact location of his house because David Hoskinson could not locate it. David Hoskinson and the complainant arrived at her boyfriend's house after 2:30 a.m. The boyfriend was standing at his front door to help David Hoskinson locate his house and to let the complainant into his house. When David Hoskinson pulled into the boyfriend's driveway, the complainant exited the car. The boyfriend stated that the complainant appeared very agitated and distressed as she entered his house. The boyfriend thought she was almost crying. The boyfriend asked the complainant what was wrong, but the complainant did not respond. The boyfriend then asked David Hoskinson what was wrong with the complainant. David Hoskinson did not reply, and the boyfriend asked David Hoskinson what he did to the complainant. David Hoskinson just shrugged his shoulders. The boyfriend went into his house and discovered that the complainant had gone into the bathroom. Eventually, the complainant came out of the bathroom and told the boyfriend what David Hoskinson had done to her. The complainant continued to cry until she fell asleep.

The next morning, around 10:30 a.m., the boyfriend took the complainant to the Hoskinsons' house to pick up her car. The complainant had to go inside to pick up the keys to her car. Elizabeth Hoskinson answered the door when the complainant knocked, and she asked the complainant to accompany her on some errands. The complainant agreed, and when the two women returned to the Hoskinsons' house, Elizabeth Hoskinson asked the complainant what was wrong with her. The complainant then told Elizabeth Hoskinson what David Hoskinson had done to her. Elizabeth Hoskinson started screaming at David Hoskinson, and then David Hoskinson began screaming at the complainant and destroying objects in the house. After David Hoskinson threw an end table towards the complainant, she left the Hoskinsons' house.

At trial, the complainant denied that she blacked out from consuming too much alcohol on December 29, 2007. However, she did admit that she had a lot of alcohol to drink that night. The complainant also stated that she was acting out of character that night because she had been drinking. The complainant stated that she lost some of her inhibitions when she drank and would engage in activities she normally would not. The complainant also stated that she had drank heavily

> after the incident, but by the time of trial, she had stopped drinking alcohol entirely.
>
> The complainant did not report the incident until January 1, 2008, because she thought her intoxicated stated during the assault would preclude charging David Hoskinson with a crime. The complainant went to the Sterling Heights police station and spoke to two different officers.
>
> Officer Antoinette Fett from the Sterling Heights Police Department interviewed the complainant on January 1, 2008. Officer Fett stated that, during the interview, the complainant told Officer Fett that she awoke to David Hoskinson's fingers penetrating her vagina while he was driving. The complainant also stated that her hand was placed on David Hoskinson's penis. Additionally, the complainant stated that David Hoskinson was driving her to her boyfriend's house when this occurred and that David Hoskinson went into a rage when the complainant told Elizabeth Hoskinson what had happened. Officer Fett stated that the complainant appeared upset during the interview.
>
> Detective Paul Reno from the Sterling Heights Police Department was the officer in charge of this case. Detective Reno interviewed the complainant and David Hopkinson. During her interview, the complainant first told Detective Reno she had not previously been "intimate" with David Hoskinson, but when asked a second time, the complainant stated she had once performed fellatio on David Hoskinson. During his interview, David Hoskinson stated that he drove the complainant to her boyfriend's house on December 29, 2007, because the complainant and Elizabeth Hoskinson had both been drinking heavily. While driving the complainant, the complainant fell asleep against the passenger window. At some point, David Hoskinson thought the complainant was going to throw up, so he reached over and rolled down the passenger side window while stopped at a red light. David Hoskinson also stated that he had difficulty finding the boyfriend's house. When they reached the boyfriend's house, David Hoskinson thought the complainant was acting "bitchy," but he did not know why. The next day, the complainant spoke to Elizabeth Hoskinson and suddenly Elizabeth Hoskinson was accusing David Hoskinson of assaulting the complainant the night before. This upset David Hoskinson, and they began fighting.

*People v. Hoskinson*, No. 290856, 2010 WL 5129891, at *1–3 (Mich. Ct. App. Dec. 16, 2010)

(footnote omitted).

      A state court jury convicted Petitioner, and he was sentenced to two years, six months to fifteen years for the CSC III conviction and one to two years for the CSC IV conviction.

Following sentencing, Petitioner filed a motion for a new trial with the state trial court, which was denied. Petitioner then filed a direct appeal with the Michigan Court of Appeals, and another motion for a new trial with the state trial court, requesting an evidentiary hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).[1]

After an evidentiary hearing, the trial court issued an opinion and order denying Petitioner's ineffective assistance of counsel claim and his motion for a new trial. *People v. Hoskinson*, No. 2008-2557-FH (Macomb Cnty. Cir. Ct. Mar. 1, 2010). The Court of Appeals affirmed. *Hoskinson*, 2010 WL 5129891, at *3-*4 (Mich. Ct. App. Dec. 16, 2010).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Hoskinson*, 798 N.W.2d 798 (Mich. 2011) (unpublished table decision).

Petitioner did not file a post-conviction motion with the state trial court or a petition for a writ of certiorari with the United States Supreme Court.

Rather, he filed this habeas petition. Thereafter, he also filed a motion to amend to correct his prison number to 709149.

**II**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case, permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

---

[1] In *Ginther*, the Michigan Supreme Court established a procedure by which a criminal defendant may seek an evidentiary hearing to establish a claim of ineffective assistance of counsel.

Mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21(2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

### III

#### A

Petitioner first argues that his rights under the Confrontation Clause were violated when the trial court excluded evidence of the complainant's past sexual conduct under Michigan's Rape Shield Statute. The state appellate courts rejected this claim on the merits. These decisions were not objectively unreasonable and are entitled to deference under the AEDPA.

As a threshold matter, to the extent Petitioner's argument is premised on the state's interpretation and application of state law, his claim is noncognizable. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). A state-court evidentiary ruling may form the basis for habeas relief only if it were so fundamentally unfair as to violate a petitioner's due-process rights. *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). A federal court conducting habeas review is limited to determining whether a conviction violates the United States Constitution, or laws or treaties of the United States. 28 U.S.C. § 2254(a). In this regard, Petitioner has not met his burden.

Moreover, to the extent that Petitioner argues that the exclusion of the complainant's past sexual conduct denied him the right to confrontation and to present a defense, the Court finds that his claims lack merit.

The Sixth Amendment guarantees a defendant the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The Confrontation Clause protects a defendant's literal right to confront witnesses at the time of trial, and a defendant's right to cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985). A trial court has the discretion to limit the scope of cross-examination. *Delaware v. VanArsdall*, 475 U.S. 673, 675 (1986). This includes discretion to impose limits based on concerns about harassment, prejudice, confusion on the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *VanArsdall*, 475 U.S. at 675; *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999). The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might desire. *Fensterer*, 474 U.S. at 20; *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007).

Like the right to confrontation, the Supreme Court repeatedly has recognized that the right to present a defense also is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (addressing the exclusion of exculpatory polygraph test result); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (addressing criminal defendants' rights to testify in their own behalf); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (addressing the defendant's right to present and cross-examine witnesses in his own defense). In *Scheffer*, the Supreme Court explained:

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

523 U.S. at 308 (internal citations and quotation marks omitted). When inquiring into the constitutionality of a trial court's decision to exclude evidence, a habeas court must consider the relevancy and cumulative nature of the excluded evidence, and the extent to which it was "indispensable" to the defense. *Crane v. Kentucky*, 476 U.S. 683, 691 (1986). Against this, courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based. *Id.*

In *Michigan v. Lucas*, 500 U.S. 145, 150 (1991), the Supreme Court recognized that Michigan's Rape Shield Statute represents a valid, legislative determination that rape victims deserve heightened protection from harassment. Under Michigan's statute, evidence of an alleged rape victims' sexual conduct is inadmissible unless it relates to past conduct with the defendant or shows the origin of physical evidence. Mich. Comp. Laws 750.520j.

Here, in addressing this claim in Petitioner's direct appeal, the Michigan Court of Appeals explained:

> David Hoskinson has failed to show that the trial court's ruling denied him the right to effectively confront the complainant. David Hoskinson wished to question the complainant regarding sexual conduct that occurred between the complainant and Elizabeth Hoskinson and between the complainant and an unidentified male in order to prove that the complainant was intoxicated while at the bar. Allowing the jury to hear about a victim's sexual past to prove the victim consumed a high level of alcohol is not a recognized exception, and such a rule would violate a victim's rights under the rape shield statute. The right to confrontation does not include a right to such questioning when the defendant is not seeking to prove that the victim made a false accusation in the past or is biased. Furthermore, defense counsel repeatedly asked the complainant during cross-examination how much alcohol she drank, how inebriated she was, and

> whether she correctly remembered the events that occurred that night. Thus, David Hoskinson effectively confronted the complainant regarding the truthfulness of her testimony relating to her level of intoxication that night, and the effect that her alcohol consumption may have had on her memory. Therefore, we conclude that the trial court did not violate David Hoskinson's right to confrontation.

*Hoskinson*, 2010 WL 5129891, at *5 (footnote omitted).

The reasoning of the court of appeals is sound. Petitioner had many opportunities to present evidence regarding the complainant. Petitioner had sufficient opportunity to question the complainant about the incident and her recollection of events; he was allowed to cross-examine her and challenge the truthfulness of her testimony. In fact, defense counsel repeatedly asked her about her alcohol consumption and whether she remembered the events that occurred that night correctly. Petitioner's claim that cross-examining the complainant about her prior sexual conduct was required in order to adequately determine her level of intoxication and credibility lacks merit. *See* 28 U.S.C. § 2254(e)(1).

Moreover, even if the court of appeals had erred on this issue (which it did not), the error would have been harmless. On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *see also Vasquez v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). Under this standard, habeas relief cannot be granted unless the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638.

Here, the jury had enough information, despite the limits placed on the cross-examination, to fully assess Petitioner's theory of the case. As noted, defense counsel was able to adequately cross-examine the complainant about her intoxication and her memory of the events. Petitioner has not established that any limitation on the defense's cross-examination of

the complainant had a substantial and injurious effect on the verdict in this matter. Petitioner is not entitled to habeas relief on his first claim.

## B

In his second habeas claim, Petitioner alleges that defense counsel was ineffective for failing to consult an expert about the effects of alcohol intoxication and its effect on memory.

After conducting an evidentiary hearing on the matter, the trial court concluded that Petitioner failed to meet the standards under the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court of Appeals reached the same conclusion.

In *Strickland*, the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, Petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, Petitioner must establish that counsel's deficient performance prejudiced the defense; counsel's errors must have been so serious that they deprived him or her of a fair trial or appeal. *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. Here, Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

In *Harrington*, the Supreme Court confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review. 131 S. Ct. at 788. The Court explained: "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Here, the trial court held an evidentiary hearing with respect to this claim and determined that counsel was not ineffective, reasoning:

> On the whole, the evidence at the *Ginther* hearing showed that the conduct at issue amounted to reasonable trial strategy that was adopted by competent and skilled defense counsel. Although counsel had attempted to present evidence going to the complainant's conduct at the bar, both the examining magistrate and trial court precluded such evidence. It was part of the defense strategy to have the prosecutor establish that the complainant was intoxicated; accordingly, it was not unreasonable that defense counsel failed to have an expert witness testify as to such issue.

Citing *Strickland*, the Michigan Court of Appeals also rejected Petitioner's ineffective assistance of counsel claim, explaining:

> At the *Ginther* hearing, defense counsel stated that his trial strategy was to persuade the jury that the complainant was so intoxicated that her testimony did not prove David Hoskinson committed the charged crimes beyond a reasonable doubt. Regarding the expert witness, defense counsel stated that he did not think to call an expert witness regarding the effects of alcohol on the complainant's memory because the complainant denied consuming a large amount of liquor, and no witnesses from the bar were able to testify regarding her conduct. Regarding the lay witnesses, defense counsel stated that Elizabeth Hoskinson refused to testify on behalf of her husband. Further, Bromm initially agreed to testify, but after her husband returned from serving in the military, she would not return any of defense counsel's phone calls. Defense counsel also noted that even if he would have found and called the unidentified male that the complainant engaged in sexual activity with at the bar earlier that evening, the witness's testimony would not have been very helpful because, according to defense counsel's understanding of the trial court's rulings, the witness would not have been allowed to testify regarding the complainant's prior sexual conduct.
>
> Defense counsel's decision not to call these witnesses to testify did not fall below the standard of reasonableness for an attorney. Defense counsel adequately explained his trial strategy in not calling each of these witnesses. Furthermore, there is nothing in the record to indicate that defense counsel's decision to call an expert witness or the other witnesses would have resulted in a different outcome of the proceedings. Accordingly, David Hoskinson has failed to overcome the presumption that counsel's performance constituted sound trial strategy.

*Hoskinson*, 2010 WL 5129891, at *9.

The reasoning of the court of appeals is once again sound. Petitioner was convicted of committing sexual acts on an incapacitated victim after a night of drinking. Calling an expert to testify that drinking a large amount of alcohol can cause incapacitating effects may not be the best strategy in such a prosecution. Defense counsel, in his cross-examination of the complainant, attempted to show that she was so intoxicated that her recollection of the events lacked credibility. However, it was the prosecution's burden to prove that she was actually incapacitated. Trial counsel's decision not to call an expert witness to explain what can happen to one's memory when one drinks too much alcohol was not unreasonable under the circumstances.

"Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation. . . . Rather, we are looking to see whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686 (internal citation and quotes omitted).

Petitioner has not shown that counsel's failure to call an expert witness to testify that consumption of alcohol may cause incapacitating effects deprived Petitioner of a substantial defense. Likewise, he has not shown that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Habeas relief is not warranted.

C

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1) (a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right, and thus, a certificate of appealability is not warranted. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis. 28 U.S.C. § 1915(a)(3); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).

## IV

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to appeal in forma pauperis is **DENIED**.

It is further **ORDERED** that Petitioner's motion to amend (ECF No. 4) is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: June 17, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 17, 2013.

s/Tracy A. Jacobs  
TRACY A. JACOBS